JACOB M. BIXLER, Plaintiff in Error, *v.* JOHN HAGAN AND MARY HAGAN, Defendants in Error.

42 367<br>33a 165

1. *City Ordinance — Market Stand — Paving Contract — Who liable for — Construction of Statute.*— The city of St. Louis is not the "occupant" of that portion of a street which has been set apart by ordinance as a stand for market-wagons during certain hours of the day, within the meaning of the ordinance relating to the engineer department (Rev. Ord. 1866, p. 329, § 21), and the owners of property fronting on portions of streets so set apart are liable to a contractor with the city of St. Louis, upon a certified tax bill, for cost of repaving the same.

2. *City Ordinance—Paving Contract—City, when liable for as "occupant of property,"* etc.— The city of St. Louis becomes chargeable for expense of repaving, "as owner or occupant of property," within the meaning of the twenty-first section of that ordinance, only when "owner or occupant" fronting upon the street sought to be repaved. (Same ordinance, § 18.)

### Error to St. Louis Circuit Court.

This was an action brought in the St. Louis Circuit Court to enforce payment of a special tax bill under a street-paving contract.

The petition states that defendants were and are owners of a lot on the east side of Broadway, between Morgan and Cherry streets; that the plaintiff was contractor for paving Broadway with wooden pavement in front of the lot of defendants and of others; that the work was done and a special tax bill given by the city engineer to the plaintiff against the defendants for the sum of $318.12, and that the defendants refuse to pay the same.

Defendants' answer, after traversing several of the allegations of the petition, set up new matter of defense, as follows: And these defendants, further answering, state that under and by virtue of the ordinance whereby it is alleged that the said pavement was authorized to be laid, it is provided that, "whenever the city of St. Louis, as the owner or occupant of property, shall become charged with the cost of any work done under the provisions of certain sections of said ordinance relating to the laying of wooden pavement (under which said provisions of said section the work mentioned in plaintiff's petition was done), the auditor shall pay the same and charge it to appropriations for streets and alleys."

And defendants further say that, by the provisions of said ordinance, no private property can be assessed for paving streets, such as in said petition alleged and specified, unless such private property adjoin and is adjacent to the street thus improved, and which is used or allowed and permitted to be used and employed by the leave and authority of the said city as a public thoroughfare. And defendants state that, by an ordinance of the common council of the city of St. Louis in relation to markets, it is provided in section two thereof "that all that portion of Broadway south of Carr street, and the sidewalks of Broadway from Morgan to Biddle street, shall constitute and be known as the North Market;" to which said portion of Broadway and the said sidewalks the said property of these defendants adjoins. And by the third section of said ordinance it is provided that "all that portion of Broadway, on either side thereof and next to the sidewalk, which lies between Morgan street and Carr street, along the curbstone, be and the same is hereby set apart as stands for farmers' wagons, and considered a part of the North Market, coming under the rules and regulations of said market and the supervision of the market-master;" to which said portion of Broadway the property of these defendants adjoins, said Broadway being sixty feet wide from curb to curb. And by the ninth section of said ordinance it is declared that the said stands referred to as occupied "shall not occupy a greater space along the curbstone than eight feet, and extending from the same three and a half feet deep." And in article 5, section 1, of said ordinance, it is provided that "the market aforesaid (meaning that hereinbefore alluded to) shall be open for the sale of all victuals and provisions from the dawn of day until nine o'clock A. M., and from four o'clock P. M. until dark, from the first day of April until the first day of October; and from the dawn of day until eleven o'clock A. M., and from two o'clock P. M. until dark, during the remainder of the year; and on Saturday of each week throughout the year the same shall be open until ten o'clock P. M."

And these defendants allege that, under and by virtue of the ordinance aforesaid, a section or strip of land some eleven feet or more in width, and being immediately in front of and adjacent

to the said property of these defendants, and severing and separating the said property of these defendants from that portion of the said Broadway that is used as a public thoroughfare, and upon which said pavement is alleged to have been made and laid, is now and for many years past has been the property of, and under the sole and exclusive use, control, occupancy, and possession of, the said city of St. Louis; and that the said city, by and through its agents, servants, and lessees, has used, employed, and occupied the said section or strip of land for stalls, stands, or booths, for the keeping and vending, in the same manner and under the restrictions heretofore referred to, of goods and produce; and for the use and occupancy of the said strip or section of land the said city of St. Louis received a fixed and large revenue and profit; and the said city claims and exercises the right to the sole and exclusive use, enjoyment, and occupation of said strip of land for the purposes aforesaid, whereby these defendants are deprived and precluded from the use of the street which adjoins this said property in connection therewith; wherefore defendants say that they are not legally or equitably chargeable with any portion of the costs of said paving, but that the same is chargeable alone to the city of St. Louis, by virtue of the premises aforesaid and the ordinances in such case made and provided. And so these defendants asked to be dismissed, with costs of suit in this behalf expressed.

To which answer the plaintiff demurred, for the following reasons: 1. Because the allegations therein contained constitute no grounds of defense to plaintiff's demand. 2. Because it appears by said allegations that the defendants are owners of the land described in plaintiff's petition. 3. Because said allegations do not show an ownership or occupation of the property by the city of St. Louis such as will make the city chargeable with the cost of paving of said street. 4. Because said allegations state that the city occupies for a part of the day a portion of the street, and that it does not own or occupy any portion of the ground fronting upon said street and described in plaintiff's petition.

The court overruled the demurrer. The plaintiff declined to withdraw the demurrer; and when the case was called at special

term for trial, the new matter set up in the answer was taken as confessed, and judgment rendered for the defendants. On appeal to the general term, this judgment was affirmed. The case comes into this court by writ of error.

*R. M. Field*, and *A. N. Sterling*, for plaintiff in error.

The plaintiff in error makes two points: 1. That the city had competent authority to establish a market-place upon a portion of Broadway, as set forth in the defendants' answer. 2. That if the action of the city in this respect was unauthorized and illegal, it would constitute no defense to the present suit, but the defendants must seek a remedy for any injury they have sustained in a direct suit against the city or its officers.

I. The city charter of 1839 confers upon the city council power " to erect market-houses, establish markets and market-places, and provide for the government and regulation thereof." The same power is conferred in all subsequent charters. In the same year an ordinance was adopted by the council, in relation to markets, which may be found in the revised ordinances of 1843, p. 242. By this ordinance the Center Market was established at the foot of Market street, and was to include the adjoining sidewalks, and the sidewalks and carriage-way on Front street, between Market and Chestnut streets. North Market, which is the same now in question, was to include Broadway as far north of Morgan street as might be necessary to accommodate persons attending the market. In like manner, South Market was to include Fifth street as far south of Labadie street as might be necessary for the same purpose. The ordinance subjects these market-places to the control of public officers, and prescribes suitable regulations by which the interests of all parties are protected, and particularly that the use of the streets as thoroughfares should not be obstructed. Since the date of that ordinance some of the markets have been abolished and a great many new ones have been established. The general principle of the ordinance of 1839, that portions of the streets and sidewalks, under proper regulations, may be used for market purposes, has never been departed from. The latest ordinance on the subject will be found in the revised ordinances of

1866, p. 460. It will be seen that the right of the city to do the acts that are set up in the answer as an unwarrantable appropriation of a public street has been exercised by the city thirty years, and, so far as is known, without dispute or complaint. What has been done by the city may be vindicated under the general police powers over the streets and thoroughfares. The farmer who brings his produce from the country is entitled to use the public streets, and in the absence of any regulation might seek a purchaser wherever he pleased. Much confusion and inconvenience would result from such a state of things. The city authorities have therefore wisely appointed stands for those who visit the city with loads of produce. The wagons containing hay or grain are assigned to particular places, those of wood and coal to other places, and even the city drivers of hacks, baggage-wagons, and furniture-cars, have their appointed places. Such regulations are everywhere adopted, and, in fact, are indispensable to good order in a populous city. Nor is the use of a street restricted to such purposes as relate to travel. The public may use it for purposes of general convenience, although travel may be somewhat incommoded or even temporarily suspended. On this principle sewers may be constructed, and gas and water pipes laid down in streets. (Kelsey v. King, 32 Barb. 410 ; Gaslight Co. v. Gas Co. 25 Conn. 19 ; West v. Bancroft, 32 Verm. 367.) It affirmatively appears in the answer that the travel along Broadway was not obstructed by the use of a portion of it as a market-place, and it seems that a passage-way forty-four feet in width was not affected at all by the ordinance in relation to markets.

II. If the city authorities have applied some part or the whole of Broadway to purposes inconsistent with its use as a street, this would be no defense to present action. For such abuses the remedy is by indictment or action by the party aggrieved. It is not questioned that the city or its officers would be liable to the defendants for any injury sustained by the latter through the misappropriation of the street by the former. If, then, in fact, the city has abused its power in this particular case, or if it had no authority under its charter to pass the ordinance or do the acts stated in the answer, and the defendants have suffered damage,

it is not denied that they may maintain an action against the city. But it is insisted that they have no right to set off their damages against the plaintiff in the present suit.

*Cline, Jamison & Day,* for defendants in error.

I. By the amendment to the city charter which authorizes the city council to pave the streets of the city of St. Louis with the Nicholson or wooden pavement, there is no authority given the council to pave the markets of the city and charge the same as a tax upon the adjoining owners, or assess the same against their property, as has been attempted in this case. (Rev. Ord. of St. Louis, 1866, p. 136, §§ 1, 2, of an act approved Jan. 16, 1860 ; an act for the relief of St. Louis, approved May 13, 1861, Rev. Ord. 1866, p. 146, § 15.)

II. The ordinance under which this work is alleged to have been done does not purport to authorize the city engineer to pave that part of Broadway dedicated and used as a market with wooden pavement, and to charge and assess the same as a tax on the property fronting on the market.

III. The city of St. Louis has for many years and at large profit rented the sidewalk and street in front of this property, and the entire block in which it is located, as a market to the hucksters, who occupy the same during the greater part of the day, thus cutting off the occupants of this property from the benefit and free use of the sidewalk and street. And it could not be supposed that it was ever intended by the legislature or the city council that the great expense of keeping this market space should be taxed against the owners of the property fronting on the market.

IV. The city council, by its own act, in dedicating and using that part of Broadway in front of this property as a market, has changed its character from a street to a market, and is estopped from recognizing it as a street, in order to bring it under the taxing clause of this ordinance, while for purposes of occupation and revenue it is regarded as a market.

V. Although, according to the ordinance regulating this market, the entire space between the sidewalks is not rented to the occupants of the market, yet that part of the space which is rented

Bixler v. Hagan et al.

lies in front of the property and between it and the middle of the market, which is left open for a carriage-way, and the property is cut off from its free use and enjoyment. And a portion of the sidewalk, which constitutes a part of the market, and is owned, used, and occupied by the city as such, intervenes between this property and the pavement sought to be charged against it; and we think that, by the terms of the ordinance, independent of the power of the city council to impose this burden on the defendants, it should be paid out of the city treasury and borne by the city at large.

HOLMES, Judge, delivered the opinion of the court.

This is a suit by a contractor with the city of St. Louis for the paving of a street, under the city ordinances, upon a certified tax bill in the usual form. The defendants had judgment on demurrer to the answer.

The defense rested on the ground that the city was itself the occupant of a portion of the street fronting the defendants' property as a stand for market-wagons during certain hours of the day, and as a part of the established market-place; and it was contended that, in such case, the cost of paving the street should have been paid by the city auditor out of the appropriations for streets and alleys, under the ordinance regulating the engineer department. (Rev. Ord. 1866, p. 328, § 21.)

We think it is very clear that the defendants have wholly misconceived the intention and effect of the ordinances. This is made apparent by reference to the preceding section (18), which provides that whenever the city is itself "the owner or occupant of property fronting upon the street sought to be so repaved," upon the petition of the owners the mayor may sign such petition on behalf of the city; and then it is further provided (§ 21) that, "whenever the city of St. Louis, as owner or occupant of property," shall be chargeable for such work, the auditor shall pay the same as aforesaid. These provisions can have no application to a case of this kind. The city is not shown to be chargeable as the owner or occupant of any property fronting on the street.

The ordinance establishing the North Market, it is true, sets apart " all that portion of Broadway " between Morgan and Carr streets, eight feet wide along the curbstone, for stands for farmers' wagons, and subjects it, as " a part of the North Market," to the regulations of the market and to the supervision of the market-master during certain hours of the day; but this does not make the city, in any proper sense, the occupant of property fronting on the street. At most it could only be considered an interference with the ordinary use of the public street. Whether or not such interference would properly come within the power which the city may lawfully exercise over the regulations of streets or markets, or would amount to any unlawful invasion of the rights of the defendants to the use of the street in common with the public generally, or what remedy, if any, they would have in such case, we need not inquire on this record. It is enough for all the purposes of this demurrer that the facts specially pleaded in the answer constituted no valid defense to the action, and the demurrer should have been sustained.

The judgment will be reversed and the cause remanded. The other judges concur.